# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRIS CARTY,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:13cv00234 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **P. SCARBERRY, et al.,** | ) | By: PAMELA MEADE SARGENT |
| Defendants | ) | United States Magistrate Judge |

The pro se plaintiff, Chris Carty, is a Virginia Department of Corrections, ("VDOC"), inmate currently housed at Red Onion State Prison, ("ROSP"). This matter is before the undersigned on cross motions for entry of summary judgment. (Docket Item Nos. 30, 75, 78) ("Motions"). The Motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

*I. Facts*

Carty brings this civil rights action against P. Scarberry, ROSP Food Service Director, and R. C. Mathena, ROSP Warden. Carty claims that these defendants have refused to provide him with the proper medically prescribed diet while he has been incarcerated at ROSP.[1] In sworn pleadings and affidavits,[2] Carty has stated

---

[1] While Carty's pleadings make mention of being held for years in an 11-foot segregation cell for 23 to 24 hours a day, the court does not interpret Carty's pleadings to assert any claim related to this condition of his confinement.

[2] The court has considered not only the evidence presented by Carty in support of his motions for partial summary judgment and in response to the defendants' motion for summary

-1-

that he should have been receiving a vegetarian cardiac low-salt/low-fat/ low-cholesterol diet. Instead, Carty stated that, beginning in March 2013, he has been receiving food trays that contain meat products and vegetable dishes that contain cheese. He also alleges that his food trays contain salt packets. Carty stated that he has been served food that he will not or cannot eat and, therefore, has not received proper nutrition, resulting in severe weight loss while incarcerated at ROSP. Carty stated that his weight has fallen to approximately 100 pounds. He stated that he has suffered from bed sores and migraine headaches and has been so weak that he, on occasion, cannot get out of his bed.

Carty states that both Scarberry and Mathena have been aware of the refusal to provide him meals complying with his medical diet since early March 2013, when he began pursuing his administrative remedies. In particular, Carty has submitted an Informal Complaint form that he submitted on March 3, 2013, complaining that he was not receiving the proper diet. (Docket Item No. 31-1 at 4.) The form shows that Scarberry responded to the complaint on March 11, 2013, stating that his medical diet controlled over his preferred "no meat" diet and that the food he was receiving was allowed by his medical diet. Carty also has submitted an Informal Complaint form that he submitted on March 17, 2013. (Docket Item No. 31-1 at 3.) On this form, Carty complained that he was receiving meat, which he did not eat, resulting in a deprivation of adequate food. This form shows that Scarberry responded to the complaint on March 29, 2013, stating that "[a] cardiac diet limits fats in the diet. A meat alternative diet substitutes meat with cheese or peanut butter, which are both high in fat. Per the DOC dietician your medical diet is to be followed over your preference."

---

judgment, but also any evidence contained in Carty's previously filed sworn pleadings and affidavits.

Carty has submitted an Informal Complaint form that he submitted on July 11, 2012, complaining of receiving food not on his medical diet, including coleslaw, cake, cookies, cupcakes and cornbread. (Docket Item No. 79-1 at 3.) Scarberry responded to this form on July 27, 2012, stating that Carty's diet orders were being followed. Carty has submitted an Informal Complaint form that he submitted on September 3, 2012, on which he complained of receiving cakes, cookies, cupcakes and pancakes on his meal trays. (Docket Item No. 79-1 at 1.) Scarberry responded to this form on September 7, 2012. Carty has submitted an Informal Complaint form that he submitted on October 18, 2012, on which he complained of not receiving the proper medical diet. (Docket Item No. 79-1 at 2.) Scarberry responded to this form on November 2, 2012, stating that Food Services was following Carty's diet orders.

Carty also has submitted Regular Grievance forms submitted on March 27 and July 28, 2013, complaining about receiving food not allowed on his medically prescribed diet. Carty has submitted an Inmate Request For Information/Service form submitted on May 17, 2013, complaining that he was not receiving vegetarian meal trays. (Docket Item No. 31-1 at 13.) Carty has submitted an Offender Grievance Response – Level I dated April 15, 2013, from Warden Mathena addressing a grievance Carty had submitted complaining of receiving salt packets, cheese, butter and potatoes on his meal trays. (Docket Item No. 31-1 at 15.) Carty has submitted a VDOC Intrasystem Transfer Medical Review form stating that on October 8, 2010, upon Carty's arrival at ROSP from Wallens Ridge State Prison, Carty weighed 135 pounds. (Docket Item No. 31-1 at 14.)

Carty has submitted a Chronic Disease Clinic Follow-Up form, which appears to be signed by a medical doctor and dated February 26, 2013. (Docket Item No. 31-1 at 1.) According to this form, Carty suffers from hypertension with chest pain and palpitations. The form also states, "[h]eart healthy diet x 1 year per [patient] request." This form states that Carty weighed 124 pounds. Carty also has submitted a VDOC Offender Diet Order form from ROSP dated February 28, 2013. (Docket Item No. 31-1 at 2.) The form appears to be signed by a registered nurse and orders a cardiac diet for Carty for one year, expiring February 26, 2014. The form also notes that Carty has food allergies to cod fish and shellfish. Carty also has submitted a VDOC Offender Diet Order form from ROSP dated May 14, 2013. (Docket Item No. 79-1 at 23.) The form also appears to be signed by a registered nurse and orders a cardiac diet for Carty for one year, expiring February 26, 2014. The form also notes that Carty has food allergies to codfish, shellfish and eggs.

Scarberry has provided evidence by affidavit. (Docket Item No. 76-1.) Scarberry has stated that, as Director of Food Services at ROSP, she continually monitors food operations to ensure that offenders receive "a proper, nutritious and wholesome diet." Scarberry has stated that ROSP Food Services follows the VDOC master menu, which is developed by the VDOC dietician. According to Scarberry, the VDOC master menu meets minimum daily nutritional requirements and provides offenders with adequate portions and an appropriate amount of daily calories.

Scarberry has stated that ROSP medical department records show that, on January 31, 2012, the ROSP institutional doctor issued a diet order stating that

-4-

Case 7:13-cv-00234-JPJ-PMS   Document 86   Filed 07/11/14   Page 4 of 14   Pageid#: 826

Carty was to receive a low-sodium, low-fat/low-cholesterol diet and noting that Carty was allergic to eggs, codfish and pasta. On February 28, 2013, the institutional doctor issued a diet order stating to feed Carty for a codfish allergy, shellfish allergy and a cardiac diet. On May 14, 2013, the institutional doctor issued a diet order for Carty to receive a cardiac diet, noting that he had food allergies to codfish, shellfish and eggs. On October 17, 2013, the institutional doctor issued a diet order discontinuing Carty's cardiac diet, but he ordered that Carty receive a diet with no eggs, cheese, dairy or pasta. On January 30, 2014, the institutional doctor issued a diet order that Carty was to be provided with only wheat bread. Scarberry stated that only white bread is served at ROSP, so Carty has received rice as a substitute for bread since this order was issued. On March 26, 2014, the institutional doctor issued a diet order stating that Carty has food allergies and is not to be served, eggs, cheese, dairy or pasta for one year.

Scarberry said that the orders for Carty to receive a medically prescribed diet, the cardiac diet, took precedent over Carty's preference of a meat alternative diet. According to Scarberry, meat is allowed and provided on a cardiac diet. Scarberry said that offenders on a cardiac diet are instructed to remove any breading from meat, poultry and fish breaded products and to remove skin from poultry products. Scarberry said that the meat alternative offered for breakfast is cheese or peanut butter, which Carty was not permitted to receive while on the cardiac diet. Because of this, Carty received turkey sausage for breakfast.

In her discovery responses, (Docket Item No. 31-1 at 9-12), which Carty has filed with the court, Scarberry stated that a "cardiac diet" is a low-salt/low-fat/low-cholesterol diet. Scarberry stated that the cardiac diet was not specifically a meat

diet, but that meat was used as a protein source on this diet. Scarberry stated that a meat alternative diet is a preference and that Food Services honors an offender's request for meat alternative diets when feasible and practical.

In her discovery responses, Scarberry also stated that, as of March 17, 2013, Carty's name was on the "meat alternative list." Scarberry stated Food Services accommodated his request by substituting beans for meats on his lunch and dinner trays, which complied with his medically prescribed diet. Scarberry stated that Food Services was not able to accommodate Carty's request for no meat on his breakfast trays because it had no substitute for the cheese and peanut butter meat alternative. Scarberry stated that, when Food Services could not accommodate Carty's request, his medical diet would take precedent.

Scarberry, in her discovery responses, admitted that most meal trays at ROSP contain a "spork packet" which contains one packet of salt. Scarberry stated that Carty was not required to use the salt packet and could "simply throw it away."

ROSP Warden Mathena has provided evidence by way of affidavit. (Docket Item No. 76-2.) Mathena stated that ROSP's Food Services Department has provided Carty with the appropriate diet pursuant to the diet orders that the ROSP medical staff has issued for him. Mathena stated that he is not a medical doctor and does not render medical care to offenders at ROSP. Mathena stated that he relied on the professional judgment and expertise of the health care providers and did not substitute his own judgment for their professional opinions regarding an offender's medical care and treatment. Mathena stated that he did not prescribe medical diets

and did not have any input into an offender's medical diet. Mathena stated that medical diet preparation and service was the responsibility of the Food Services Department at ROSP. Mathena stated that he had no involvement in food preparation for medical diets.

In his discovery responses, (Docket Item No. 79-1 at 15-19), which Carty has filed with the court, Mathena stated that he could not recall having any personal contact with Carty. Mathena stated that he was aware that the following diet orders were issued for Carty:

1. February 28, 2013, diet order to feed Carty for a codfish allergy, shellfish allergy and cardiac diet;
2. May 15, 2013, diet order to feed Carty for codfish allergy, shellfish allergy, egg allergy and cardiac diet;
3. October 17, 2013, diet order stating Carty was not to receive eggs, cheese, dairy and pasta and to discontinue cardiac diet;
4. March 26, 2014, diet order stating Carty was not to receive eggs, cheese, dairy, and pasta for one year.

Mathena stated that a meat alternative diet was a preference. Mathena also stated that Food Services honors an offender's request for meat alternative diets when feasible and practical. Mathena further stated that Carty's medical diet took precedent over his preference for a meat alternative diet.

Carty also has submitted portions of an affidavit provided by V. Phipps, R.N., which was originally filed in support of an earlier motion to dismiss. (Docket Item No. 31-1 at 20-22.) Phipps stated that she is a registered nurse and is the head

nurse at ROSP. Phipps stated that she was aware that Carty had lost weight and that this weight loss was documented in his medical records.

Carty has submitted a VDOC Complaint and Treatment Form dated November 31, 2012, which states that Carty weighed 130 pounds and orders Carty to receive a low-sodium, low-fat/low-cholesterol diet. (Docket Item No. 79-1 at 24.) Much of the rest of the handwriting on this form is illegible. Carty has submitted a VDOC Complaint and Treatment Form dated April 9, 2013, which states that Carty was complaining that the correctional officers were refusing to feed him. (Docket Item No. 31-1 at 24.) The form documented that Carty stated that the officers' refusal to feed him was not the reason he was losing weight. Carty stated that he was losing weight because he refused to eat the food he was being served. Carty said he would not eat pasta because he was allergic to it, but he stated that he did eat bread. Carty also has submitted a VDOC Complaint and Treatment Form dated May 2, 2013, which states that the medical department had been monitoring Carty's weight loss over several months. The form notes that Carty's baseline weight was 135 and notes a recent recorded weight of 110. (Docket Item No. 31-1 at 23.)

## *II. Analysis*

Carty has filed seeking partial summary judgment against Scarberry on liability, (Docket Item No. 30), and against Mathena on liability, (Docket Item No. 78). The defendants argue that they are entitled to summary judgment entered in their favor for a number of reasons. (Docket Item No. 76.) Pursuant to Federal Rules of Civil Procedure Rule 56(c), the court should grant summary judgment

-8-

Case 7:13-cv-00234-JPJ-PMS   Document 86   Filed 07/11/14   Page 8 of 14   Pageid#: 830

only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc), *cert denied*, 498 U.S. 1109 (1991); and *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Inc.*, 475 U.S. at 587-88; *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross*, 759 F.2d at 364; *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). In other words, the nonmoving party is entitled "to have the credibility of his evidence as forecast assumed." *Miller*, 913 F.2d at 1087 (quoting *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This amendment not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Supreme Court has described two general categories of Eighth

Amendment claims in the prison setting: those involving "conditions of confinement" and those involving "excessive use of government force." *Thaddeus-X v. Blatter*, 175 F.3d 378, 401-02 (6th Cir. 1999). In *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976), the Supreme Court acknowledged that "punishment" could go beyond that which was specifically part of the sentence and could include the conditions facing the inmate once imprisoned.

All Eighth Amendment claims have an objective component. In *Estelle*, the Supreme Court determined that the objective component encompasses not only "physically barbarous punishments," but also the infliction of "unnecessary suffering [that] is inconsistent with contemporary standards of decency." 429 U.S. at 102-03. When the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element also must be attributed to the inflicting officer in order to make out the subjective component of an Eighth Amendment violation. *See Wilson v. Seiter*, 501 U.S. 294, 300 (1991). However, the subjective prong differs in the two sets of cases; that is, the state of mind necessary in order to find a prison official in violation of the Eighth Amendment depends on the nature of the case -- whether it describes the conditions of confinement facing the inmate, or alternatively involves the excessive use of force against him.

Here, Carty's complaint undoubtedly challenges the conditions of his confinement. In *Wilson*, 501 U.S. at 302-03, the Supreme Court held that in a prison conditions case, wantonness entails "deliberate indifference." In *Helling v. McKinney*, 509 U.S. 25, 36 (1993), the Supreme Court held that an inmate stated a cognizable claim under the Eighth Amendment and that the subjective component

would require a showing that prison officials were deliberately indifferent to a substantial risk of harm to his health -- the fact that the potential medical injury lay in the future did not change the analysis. As stated above, the objective element would require a showing that society considers the risk he faces "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly" to it. In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court more specifically defined the term "deliberate indifference" in the Eighth Amendment context to mean that the individual prison official was aware of the risk to the inmate's health and was deliberately indifferent to it. Furthermore, it has been held that inmates are entitled to receive adequate nutrition and calories. *See Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (holding that inmates must be provided nutritionally adequate food); *see also Bolding v. Holshouser*, 575 F.2d 461 (4th Cir. 1978); *Bowring v. Godwin*, 551 F.2d 44 (4th Cir. 1977).

Based on the evidence before the court, I find that there is no genuine dispute of material fact and that the defendants are entitled to entry of summary judgment in their favor on Carty's claim. Carty has not presented any evidence that he is being provided with nutritionally inadequate food. The uncontradicted evidence before the court is that, from February 24 to October 17, 2013, ROSP doctors ordered that Carty receive a cardiac diet which took into account his food allergies. The uncontradicted evidence before the court is that a cardiac diet is a low-salt/low-fat/low-cholesterol diet. The uncontradicted evidence before the court is that meat is allowed as a protein source on a cardiac diet. Carty has presented no evidence that he is medically required not to eat meat. He also has presented no evidence that his religious beliefs require him not to eat meat. Instead, the uncontradicted evidence before the court shows that Carty *prefers* not to eat meat.

The uncontradicted evidence before the court also shows that ROSP Food Services accommodated Carty's preference for no meat at his lunch and dinner meals by substituting beans as his protein source. The uncontradicted evidence before the court shows that the meat alternative for breakfast at ROSP was cheese and peanut butter, food items that were not allowed on Carty's cardiac diet. The uncontradicted evidence before the court is that ROSP Food Services provided breakfast meat in the form of turkey sausage to Carty. The uncontradicted evidence before the court also shows that, on occasion, Carty was served foods containing fats and starches, including cheese, until he was restricted from eating it. The uncontradicted evidence before the court shows that the meals Carty has been served complied with his medically prescribed diets and met the minimum daily nutritional requirements and provided adequate nutrition.

I hold that, as a matter of law, the fact that ROSP has provided food to Carty that Carty *prefers* not to eat does not violate contemporary standards of decency and, therefore, does not amount to cruel and unusual punishment.

Carty also claims that his right to be free from cruel and unusual punishment was violated by ROSP Food Services providing him with a packet of salt on every meal tray while he was on a low-salt diet. While the defendants admit that Carty has been provided with a salt packet on each of his meal trays, they, of course, point out that Carty has not been required to consume the salt. Insofar as Carty bases his Eighth Amendment claim on this fact, I find that it is blatantly frivolous. Such acts by prison officials do not offend contemporary standards of decency. On the other hand, filing a legal claim based on such an act does offend contemporary

standards of sensibility. Carty should understand that the filing of such claims only hurts his credibility with the court.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. There is no genuine dispute of material fact;
2. Carty has been provided with meals that complied with his medically prescribed diets and met the minimum daily nutritional requirements and provided adequate nutrition;
3. The fact that ROSP has provided food to Carty that Carty *prefers* not to eat does not violate contemporary standards of decency and, therefore, does not amount to cruel and unusual punishment;
4. The defendants are entitled to entry of summary judgment in their favor on Carty's claim.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny Carty's motions for partial summary judgment, (Docket Item Nos. 30, 78), grant the defendants' motion for summary judgment, (Docket Item No. 75), and enter summary judgment in favor of the defendants.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: July 11, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE